(17 App. Div. 610.)

## DISBROW v. WESTCHESTER HARDWOOD CO.

(Supreme Court, Appellate Division, Second Department. May 11, 1897.)

1. DAMAGES—MEASURE OF—CUTTING TIMBER.
    The measure of damages for wrongfully cutting timber is the difference between the value of the land with the timber and its value after the timber was cut.

2. INJUNCTION—REMEDY AT LAW.
    Injunction will lie against the removal from plaintiff's premises of wood wrongfully cut by defendant.

Appeal from trial term, Westchester county.

Action by Livingston Disbrow against the Westchester Hardwood Company for an injunction and damages. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

T. Clement Campbell, for appellant.

Wilson Brown, Jr., for respondent.

GOODRICH, P. J. On January 9, 1895, the plaintiff, who was the owner of two adjoining farms at New Rochelle, one known as the "Underhill" farm, consisting of 89 acres, and the other known as the "Homestead" tract or farm, consisting of 66½ acres, entered into a written agreement with the defendant, whereby he sold to it all the standing wood on the farms measuring more than six inches in diameter at the stumps, said wood being located as follows: "Wood in· wood lot on Underhill farm line, N. S. corner, adjoining cross road leading from North St. to Friends' meetinghouse;" "wood in wood lot on homestead of L. Disbrow,"—the consideration being $700 for the first-named parcel and $300 for the second-named parcel. The agreement also gave to the defendant the right to put up mills and shanties necessary for cutting and·sawing the trees, the same to remain until April 1, 1896, and to be removed thereafter on 30 days' notice. Cut wood and lumber to remain thereafter, if it should be necessary for the company to leave it there, on spots which were not needed for laying out streets. A certain road right was also given from the wood lot of the homestead to the wood lot of the Underhill farm, according to the season when the wood was hauled. The defendant began the work of cutting, and continued the same up to September or October, 1895, but the plaintiff claimed that in doing the work the defendant cut the standing wood on other lots than the two specified in the agreement, and also cut many trees which were less than six inches in diameter, and, in fact, entirely denuded the two farms of wood; thus doing damage to them far greater in amount than can be measured by the mere value of the cut timber. A part of the wood was removed, and a part corded for removal, and remained on the premises at the time of the commencement of this action, which was in October, 1895. The complaint prays for judgment enjoining the defendant from felling any standing trees less than six inches in diameter, and from cutting trees upon any part of the premises other than the two lots referred to in the

contract, and from removing any wood, trees, timber, or logs which have been so cut and felled. The action was tried before Justice Dykman, when a large amount of testimony was taken, and a judgment was entered as prayed for in the complaint, for the damages resulting from the decreased value of the entire two farms, which was fixed at $2,500, and for the value of the trees felled on parts of the property which the plaintiff claims were not included in the agreement, which was fixed at $224, and for a permanent injunction.

Two very serious questions of fact were litigated at the trial. The first related to what wood was intended to be included in the contract, and what was its location; and the second, as to the size of the trees felled. A diagram which was used when the contract was entered into, and upon which are outlined what are called the "Wood Lot on Underhill Farm" and the "Wood Lot on Homestead of L. Disbrow," was annexed to the complaint, and put in evidence. There is also another lot, marked on the diagram, "Pasture and Small Wood Lot, not Sold," which lies between the two former lots. There is evidence tending to show that the defendant not only cut the trees upon the wood lot on the Underhill farm and the wood lot on the homestead farm, but also on the pasture and small wood lot not sold, and on other property lying to the westward of the Underhill wood lot; and that the land thus cut over contained all the wood on the entire two farms, leaving them stripped of all timber. There was evidence on the part of the defendant tending to show that the parties intended to include in the agreement all the wood on all the lots upon which timber was cut. The learned court, however, found that the only wood included in the agreement was that upon the Underhill lot and the homestead lot. There was controversy in respect of a saw-tooth shaped lot on the east side of the Underhill lot, but the learned court found in favor of the defendant in respect to this, and decided that it was intended to be included in the Underhill lot. The court also found that the defendant not only felled the standing wood over six inches in diameter, and such smaller trees as it was necessary to cut because they stood in the way of the trees over six inches in diameter, but also a large number of trees less than six inches in diameter, and, indeed, all the trees that were of any value upon the said farms, except a small fringe of trees standing in the homestead lot, and excepting the 25 locust trees referred to in the contract, and enumerates specifically the number cut of each class. Upon this finding of facts, as made by the court, neither the liability of the defendant nor the measure of damages is doubtful, for while the defendant was authorized to enter upon the farms and cut wood, its right was limited to cutting trees in accordance with the agreement, and not otherwise. For any cutting of trees other than those described in the contract, and such other trees as might be necessary to enable it to cut its own timber, it was a trespasser.

The supreme court, at general term, in Van Deusen v. Young, 29 Barb. 9, had under consideration a contract for the sale of lands, under which the purchaser entered into possession, and cut timber. The contract of sale was never consummated, and the court remitted the parties to their original rights for the injuries done to the in--

heritance by the purchaser, and held that the action was for tres-
pass. In the case of Dwight v. Railroad Co., 132 N. Y. 199, 30 N. E.
398, the court held that where the value of the trees detached from
the soil would not adequately compensate the owner for the wrong
done, a recovery is permitted embracing all the injury resulting to
the land, Judge Parker saying:

"This is the rule where growing timber is cut or destroyed. Because not yet
fully developed, the owner of the freehold is deprived of the advantage which
would accrue to him could the trees remain until fully matured. His damage,
therefore, necessarily extends beyond the market value of the trees after sep-
aration from the soil, and the difference between the value of the land before
and after the injury constitutes the compensation to which he is entitled. [Cit-
ing in support of his views from the case of Wallace v. Goodall, 18 N. H. 439,
the following:] 'The value of young timber, like the value of growing crops,
may be but little, when separated from the soil. The land, stripped of its
trees, may be valueless. The trees, considered as timber, may, from their
youth, be valueless, and so the injury done to the plaintiff by the trespass would
be but imperfectly compensated, unless he could receive a sum that would be
equal to their value to him while standing upon the soil.' "

Judge Parker continues:

"It is apparent from the authorities already cited, as well as those following,
that in cases of injury to real estate the courts recognize two elements of dam-
age: (1) The value of the tree or other thing taken, after separation from the
freehold, if it have any; (2) the damage to the realty, if any, occasioned by
the removal."

A similar result was arrived at in the case of Argotsinger v. Vines,
82 N. Y. 308, where the court held that the proper rule for damages
for cutting and removing of timber was the difference between the
value of the farm with the timber and its value after such timber
was cut, and that this difference furnished a proper measure of dam-
ages. In the case at bar there was evidence showing that the value
of the farms after cutting the timber which was actually sold to the
defendant would be about $91,000, and the value after the
trees had been cut in the manner in which it was done by the de-
fendant was about $86,000,—a difference of $5,000,—whereas the
amount awarded was only $2,500. The damages awarded for this part
of the injury were, therefore, much less than the amount which might
have been given upon the testimony referred to. Photographs were
used at the trial and upon the argument in this court which showed
such a wanton cutting and stripping of the timber upon the farms
as would have justified a much larger award of damages than that
which was made by the court.

The defendant contends that the plaintiff was not entitled to in-
junctive relief, on the ground that the defendant had concluded its
work, and was not cutting timber, at the time the temporary injunc-
tion was granted, or the final judgment entered, and has not since
that time; and that an injunction by judgment should not be granted
to restrain the removal of the corded wood left upon the farms, on
the ground that an action at law can be maintained for the pecuniary
damages resulting from the defendant's acts. We do not agree with
this contention, as the plaintiff has a clear right to restrain further
unlawful cutting by the defendant, or to prevent its removal of wood
which, being not six inches in diameter, it never had the right to cut,

and to which it never acquired any right or title. We have carefully examined the exceptions in the case, and they are practically decided to be untenable by the views already expressed.

The judgment must be affirmed, with costs. All concur.